UNITED STATES D1ISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID W. ADAMS II,

    *Plaintiff,*

v.                                      CASE NO. 13-cv-14142

COMMISSIONER OF            DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 13, 14.)

Plaintiff filed an application for a period of disability and DIB with a protective filing date of January 21, 2011, alleging that he became unable to work on January 15, 2011. (Transcript, Doc. 9, at 60.) The claim was denied at the initial administrative stage. (*Id*.)

On December 7, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") John Dodson, who considered the application for benefits *de novo*. (Tr. at 60-69.) In a decision dated January 27, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 15, 2011, through the date of the ALJ's decision. (Tr. at 69.) Plaintiff requested Appeals Council review of this decision. (Tr. at 56.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 29, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 40-43.) On September 27,

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would

decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.    Governing Law**

Disability for purposes of DIB is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI). Plaintiff's Social Security disability determination is to be made through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without

a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since January 15, 2011. (Tr. at 62.) At step two, the ALJ found that Plaintiff's schizophrenia, paranoid and other psychotic disorders and personality disorders were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plainiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 63-64.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform

> light work as defined in 20 C.F.R. §404.1567(b) except but [sic] with unskilled work with no involvement with the public...[and] no concentrated exposure to hazards such as heights and no assembly line "like" work.

(Tr. at 64.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work as a laborer. (Tr. at 67-68.) The ALJ also found that as of the alleged disability onset date,

Plaintiff was 38 years old, which put her in the "younger individual age 18-49" category. *See* 20 C.F.R. §§ 404.1563 and 416.963. At step five, the ALJ found that Plaintiff could perform the requirements of a limited range of light exertional level and unskilled occupations. (Tr. at 68.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 68-69.)

### E.  Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has a history of mental illness and polysubstance abuse. (Tr. at 473-538.) Plaintiff began psychiatric treatment in 2009. (Tr. at 357.) Plaintiff also sought inpatient treatment for alcohol abuse in March 2010. (Tr. at 296-306.) Plaintiff resumed outpatient psychiatric treatment subsequent to his discharge from detoxification. (Tr. at 307-324.)

Plaintiff was admitted to The Behavior Center of Michigan on January 16, 2011, after presenting to the emergency room of St. Joseph Mercy Livingston Hospital with suicidal and homicidal thoughts and lacerations on his wrists. (Tr. at 469-549.) Upon admission, Plaintiff reported auditory command hallucinations instructing him to kill his parents, his brother and himself. (Tr. at 475, 514.) Plaintiff was diagnosed with schizophrenia paranoid chronic with acute exacerbation and paranoid personality disorder. (Tr. at 482.) Plaintiff was initially treated with Haldol, Seroquel, Depakote and Cogentin. Before his discharge from the Behavior Center of Michigan on January 24, 2011, the Haldol, Seroquel and Depakote were discontinued, replaced with Effexor, trazodone and Lamictal. (*Id*.) At discharge,

7

Plaintiff was noted to be alert and oriented and he denied suicidal or homicidal ideation. (Tr. at 486.) His mood and coping skills improved and he reached the baseline in treatment goals. (Tr. at 483.) Plaintiff's prognosis was fair to good, depending on his compliance with outpatient treatment and maintenance of medication schedule. (*Id.*) Plaintiff was discharged to outpatient follow-up psychiatric care with Livingston Community Mental Health. (Tr. at 485.)

Plaintiff next sought psychiatric treatment from Macomb County Community Mental Health in March 2011. (Tr. at 551-569.) At his initial intake, Plaintiff's mental status examination revealed cooperative behavior, unremarkable speech, reported visual hallucinations of people and spiders, paranoid delusional thought process, and fearful, anxious and dysphonic mood. The diagnostic summary noted Plaintiff was suffering from severe depression with suicidal ideation, paranoia, anxiety, sleep disruption, racing thoughts and impaired focus and concentration. (Tr. at 562.) No further records of treatment from Macomb County Community Mental Health are part of the record.

In August 2011, Plaintiff sought outpatient treatment from Pioneer Counseling Center. (Tr. at 581-590.) Plaintiff reported he had been receiving treatment from Macomb County Community Mental Health, but stopped because he disliked his therapist. (Tr. at 582.) A mental status examination indicated Plaintiff exhibited cooperative behavior, appropriate attire, unremarkable facial expressions and posture, normal gait and motor activities. He was alert and fully oriented, with normal memory and knowledge consistent with his education.

His speech was normal and his thought process was spontaneous, with normal progression. He demonstrated normal perception, fair judgment and sad, anxious mood. He denied suicidal or homicidal ideation. (Tr. at 587-588.) He also reported that he had started a new job as a machine operator. (Tr. at 582.)

Maura Clark, Ph.D. completed a Mental Residual Functional Capacity Assessment on Plaintiff.[3] Dr. Clark determined that Plaintiff was moderately limited in his ability to understand, remember and follow detailed instructions and in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. at 386-387.) Dr. Clark also found Plaintiff to be moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 387.) Dr. Clark also opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. (*Id*.) Dr. Clark expanded on her categorizations as follows: Plaintiff's sustained concentration and persistence are moderately impacted; he could handle work in settings with fewer people, responding appropriately to brief supervision and interactions with coworkers; he is able to understand, remember and follow simple instructions, make judgments commensurate with unskilled work and deal with changes in a routine work setting. (Tr. at 388.)

---

[3] Dr. Clark's MRFC was completed on September 21, 2010 as part of the determination of Plaintiff's earlier application for disability benefits. That application was denied on September 22, 2010. (Tr. at 129.)

9

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> is capable of light work, with only superficial, occasional contact with the public, occasional interaction with supervisors and co-workers, with no concentrated exposure to hazards such as heights and machinery and no assembly line or converyor-belt type work such that one's performance might impact that of one's co-workers.

(Tr. at 104-105.) The VE testified that such a person could not perform Plaintiff's past relevant work as a laborer but could perform the jobs of office or hotel cleaner (8,500 jobs regionally) and light laundry worker (4,000 jobs regionally). (Tr. at 105-106.)

**F.    Analysis**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ's determination is not supported by substantial evidence because it gave substantial weight to the opinion of the State Agency Medical Consultant, and because the RFC developed by the ALJ did not accurately account for Plaintiff's impairments. (Doc. 13.)

**1.    Medical Source Evidence**

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013)(internal citations omitted).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006).

Because the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled

11

or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a dissension's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

Here, the ALJ properly applied the regulatory standards for evaluating medical source evidence. The ALJ gave Dr. Clark's opinions substantial weight because they were consistent with the notes from Plaintiff's psychiatric treatment and with the record as a whole. (Tr. at 67.) In fact, Plaintiff does not cite, nor does a review of the record evidence reveal any contradicting opinion from any other treating or examining medical source.[4] (Doc. 13.) Oddly, Plaintiff seemingly argues that the ALJ erred by giving Dr. Clark's opinions more weight than the opinions of Plaintiff's wife. Because Plaintiff's wife is not an acceptable medical source, as defined by the regulations, her opinion is not due any deference and the ALJ's rejection of it does not constitute error.

Plaintiff also argues that the ALJ substituted his own medical opinion for those of Plaintiff's medical providers and that the ALJ's findings lacked a logical connection to the

---

[4] Although Plaintiff does not seek a "sentence six" remand for consideration of additional evidence, or, in fact, even reference the additional medical evidence submitted to the Appeals Council, I find it worth noting that the new medical records reflect opinions containing fewer and less restrictive limitations than those expressed by Dr. Clark. (Tr. at 614, 637.)

record evidence. (Doc. 13.) To the contrary, the ALJ developed Plaintiff's RFC in accordance with the substantial weight given to Dr. Clark's opinions. Based on Dr. Clark's findings of Plaintiff's moderate limitations in social functioning, the ALJ limited Plaintiff to work with no involvement with the public and limited interaction with supervisors and coworkers. (Tr. at 104-105, 387.) Similarly, the ALJ incorporated Dr. Clark's determination of Plaintiff's moderate limitation in maintaining concentration, persistence and pace by restricting Plaintiff to work without assembly-line like conditions. (Tr. at 105, 388.) Plaintiff's arguments that the ALJ substituted his own medical opinions for those of the acceptable medical source opinions and that his findings were without logical connection to the record evidence are without merit. I conclude that the ALJ properly evaluated the medical source evidence; the ALJ's findings were based upon the properly evaluated medical source evidence and thus supported by substantial evidence.

    **b.**     **RFC**

Plaintiff argues that the ALJ's determination of non-disability is not supported by substantial evidence because the developed RFC does not accurately portray Plaintiff's mental impairments. (Doc. 13.) Although Plaintiff is correct in his argument that an RFC must accurately portray a plaintiff's physical and mental impairments, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010), he does not articulate how the RFC (and the hypothetical questions informed by that RFC) fail to reflect his impairments. In fact, as Defendant argues, Plaintiff's challenge of the RFC finding are so vague and undeveloped as

to render them waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones."]; *see also, Deguise v. Comm'r of Soc. Sec.*, 2013 WL 1189967 at *7 (E.D.Mich. 2013) ("Plaintiff's arguments regarding the assessment of his credibility and any inconsistency or error in the VE's testimony regarding the DOT are so woefully underdeveloped that they need not be considered any further."); *Jackson v. Comm'r of Soc. Sec.*, 2013 WL 1148417 at *7 (E.D.Mich. 2013)( "[P]laintiff's argument is wholly insufficient and undeveloped. Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence . . . ."); *see also Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865 at *1 n.1 (Order adopting Magistrate's Report and Recommendation and pointing out Plaintiff's counsel's reliance on "conclusory assertions and absence of developed argument").

Nevertheless, even if it could be argued that Plaintiff applied the common argument that the RFC limitation, such as the one the ALJ used here, for "unskilled work" with no "assembly-line like" conditions, fails to account for moderate concentrational and pace deficiencies, the medical opinion evidence supports the limitations contained within the ALJ's RFC.

As noted by another court in this District,

> [t]here are cases ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical to unskilled work or simple, routine tasks–but also other cases that have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.

*Roberts v. Comm'r of Soc. Sec.*, 2011 WL 4407221 at *8 (E.D. Mich., Aug. 8, 2011)(internal citations omitted).

Although the *Roberts* court acknowledged "that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence and pace...," it determined that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of simple, routine...work, but excludes a moderate limitation in concentration." *Id.* Indeed, the Sixth Circuit has rejected "the notion that a hypothetical must contain talismanic language," instead determining that a hypothetical question is sufficient if it encompasses Plaintiff's relevant limitations. *Street v. Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D. Mich 2005)(citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir 2001)). Accordingly, a court "**must look at the record as a whole and determine if substantial evidence supports the ALJ's decision.**" *Roberts,* 2011 WL 4407221 at *8(emphasis added)(citing *Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D. Mich 2001), *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008), *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010); *Marini v. Comm'r of Soc. Sec.*, 2014 WL 1230034, at *5 (E.D. Mich. March 25, 2014).

The finding of a moderate limitation in concentration, persistence, or pace must be considered in conjunction with the medical experts' conclusions, and other evidence, that suggests Plaintiff could successfully perform occupational tasks. *Roberts*, 2011 WL 4407221 at *8. In this case, the medical opinion evidence supports the ALJ's hypothetical limitation for "unskilled" work performed in a non-production pace setting. Dr. Clark opined that, although Plaintiff was moderately limited in his ability to understand, remember and follow detailed instructions, he was not significantly limited in his ability to understand, remember and follow simple instructions. (Tr. at 386-388.) After reviewing Plaintiff's medical records, Dr. Clark remarked that Plaintiff's sustained concentration and persistence are moderately impacted but he could handle work in settings with fewer people, responding appropriately to brief supervision and interactions with coworkers; he is able to understand, remember and follow simple instructions, make judgments commensurate with unskilled work and deal with changes in a routine work setting. (Tr. at 388.)

In addition, Plaintiff's treatment records reflect an ability to do unskilled work. His initial intake to Macomb County Community Mental Health program indicates that Plaintiff could independently structure time effectively (engage in daily routines), find purposeful things to do (engage in hobbies, social groups and exercise) and make reasonable choices about long-term plans (future living arrangements and school/work goals). (Tr. at 556.) It also noted that Plaintiff had the capacity to independently address housekeeping (laundry, dishes, trash removal), food preparation (simple meals, sandwiches), and shopping (*Id.*)

Finally, Plaintiff's described activities demonstrate sufficient concentration and persistence to do unskilled work without assembly-line like conditions. His activities, as reported to his treating therapist at Pioneer Counseling Center, include watching movies, participating in paintball games, and watching sports on television. (Tr. at 581.) Plaintiff also reported starting a job as a machine operator in August 2011. (*Id*.) See *e.g., Marini,* 2014 WL 1230034 at *18(ALJ determined that RFC limiting Plaintiff to simple, routine, repetitive tasks was adequate where Plaintiff regularly engaged in activities that require a "fair degree of concentration, persistence and pace," such as watching television and playing video games); *see also LaTarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009).

Finally, Plaintiff has not explained why more detailed or specific limitations were required in order to account for his deficiencies in concentration, persistence and pace, nor has he suggested what those additional limitations should be. Without any explanation as to why the ALJ's restriction for unskilled work without assembly-line like conditions does not account for Plaintiff's concentration, persistence or pace impairment, I must conclude that the restriction for unskilled work without assembly-line like conditions contained within the ALJ's hypothetical adequately addresses Plaintiff's concentrational and/or pace deficiencies. *See Marini*, 2014 WL 1230034 at *18; *see also, Lewicki*, 2010 WL 3905375, at *3.

Given the medical opinion evidence regarding Plaintiff's ability to perform simple instructions, the concentration and persistence exhibited by Plaintiff in watching sporting

17

events, playing paintball, watching movies and undertaking new jobs and the absence of any explanation as to why more detailed or specific limitations are necessary to account for Plaintiff's impairments, I find that the ALJ's RFC and his determination that Plaintiff is not disabled are supported by substantial evidence.

### G. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                      s/ *Charles E Binder*
                                                      CHARLES E. BINDER
Dated: November 6, 2014                      United States Magistrate Judge